C. Douglas **WIKLE**, Trustee, Appellant,

v.

Alexander T. **CHOHON**, Appellee.

No. 18831.

United States Court of Appeals
Ninth Circuit.

Aug. 26, 1964.

Ernest R. Utley, Utley & Houck, Los Angeles, Cal., for appellant.

Adley M. Shulman, Shulman & Shulman, Beverly Hills, Cal., for appellee.

Before CHAMBERS, POPE and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge:

The basic question presented by this appeal is whether a joint declaration of homestead made by the bankrupt and his wife, residents of the State of California, upon the joint tenancy interest of the bankrupt in described real property of himself and wife held in joint tenancy is valid against the bankrupt's trustee in bankruptcy, where the declaration of homestead was not recorded until approximately eighteen months after the

filing of an involuntary petition in bankruptcy against the bankrupt.

The material facts are not in dispute and were presented to the referee in bankruptcy by written stipulation of the parties. These facts may be summarized as follows:

On November 29 and November 30, 1956, for a valuable consideration consisting of a loan in the sum of $45,000.00 from Title Insurance and Trust Company, the bankrupt and his wife signed and delivered grant deeds to Title Insurance and Trust Company to the real property above mentioned, which deeds were recorded on November 29th and November 30th, 1956.

On November 29, 1956, the Title Insurance and Trust Company executed and delivered a document entitled "DECLARATION OF TRUST" wherein the Title Company as "trustee", declared that it had received the deed purporting to convey to it the real property above mentioned; that the beneficial interest under the trust was vested in bankrupt and his wife as joint tenants, who were therein designated "beneficiaries," and that the trustee holds such title as was thus received by it, to the real property, in trust, under the conditions and for the purposes set forth in the declaration of trust, among which are:

1. To secure the payment of the promissory note dated November 29, 1956, wherein bankrupt and his wife agreed to pay to Title Insurance and Trust Company in its individual capacity the sum of $45,000.00 together with interest thereon at the rate of 5% per annum, all due and payable within thirty days after date thereof;

2. In event payment is made in full of the promissory note, it shall reconvey the real property to the beneficiaries as joint tenants, whereupon the trust shall fully cease and terminate;

3. In the event the beneficiaries shall default in the payment of said promissory note, then the trustee in its individual capacity may declare all sums secured to become immediately due and payable by giving written notice of default and demand for payment to the trustee and by mailing a copy of the notice to the beneficiaries at their last known address, and thereupon the trustee shall sell the beneficial interest and pay said promissory note, together with fees and expenses in connection therewith. The declaration of trust then detailed directions for the conduct of the sale of the beneficial interest. Such directions required that ninety days after receipt of the notice of default by the trustee, it was required to cause a notice of the time and place of sale to be published once a week for three weeks in a newspaper of general circulation, and cause a copy of said notice to be mailed to the beneficiaries at least ten days before the date set for sale. The sale was required to be at public auction to the highest bidder for cash in lawful money of the United States of America. Upon such sale and the receipt of the purchase price, the trustee was required to execute and deliver to the purchaser an assignment covering the beneficial interest so sold. In this respect the declaration of trust states:

"The beneficiaries, by their approval of this instrument, for themselves hereby transfer, convey and assign to the trustee their title to the entire beneficial interest under this trust sufficient to enable the trustee to transfer, convey and assign said beneficial interest or any part thereof to the purchaser at any sale thereof provided for in this section."

The declaration of trust contained a written approval thereof by the beneficiaries, in which they declared that the declaration of trust correctly declared the trust upon which the property was to be held by the trustee, and approved the instrument in all particulars. The declaration of trust was recorded on August 8, 1960 by the trustee.

In the written stipulation filed by the parties it is stipulated, among other things,

"Although in the form of grant deeds absolute on their face, the said

conveyance was in fact a security transaction reserving to bankrupt and his wife equitable title to said real property pursuant to declaration of trust executed on November 29, 1956 and recorded on August 8, 1960 by Title Insurance and Trust Company."

On February 18, 1959, an involuntary petition in bankruptcy was filed against the bankrupt and he was adjudicated a bankrupt on the 15th day of March, 1960.

C. Douglas Wikle was appointed trustee of the bankrupt estate on the 13th day of December, 1960 and duly qualified on December 15, 1960.

On October 6, 1960 the bankrupt and his wife jointly declared a homestead in the real property, the same being the place upon which they then resided and had resided at all times pertinent hereto. This declaration of homestead was recorded October 6, 1960. No declaration of homestead had theretofore been recorded.

On December 22, 1960 bankrupt filed his schedules and claimed a homestead exemption on the real property.

The trustee filed his report of exempt property on August 1, 1961 refusing to set the homestead aside as exempt. Objections by the bankrupt to the trustee's determination of exempt property were filed on August 9, 1961. A hearing was held before the referee upon the bankrupt's objections. Following the hearing, the referee denied the bankrupt's objections to the trustee's refusal to set aside the homestead as exempt, and approved the report of the trustee refusing to exempt the homestead.

Among the findings of fact, the referee found as a fact as follows:

"Although in the form of a grant deed absolute on its face, said conveyance was in fact a security transaction reserving to the bankrupt and his wife equitable title to said real property pursuant to declaration of trust executed on November 29, 1956 and recorded August 8, 1960 by Title Insurance and Trust Company."

On petition of the bankrupt to the District Court for a review of the order of the referee, and following hearing before the district court, the district court reversed the order of the referee denying the homestead exemption. It clearly appears from the order of the district court that it adopted the stipulation of the parties and the finding of fact of the referee that the bankrupt had only an equitable interest in the real property in question, and that such stipulated fact was the decisive factor upon which the district court distinguished our holding in Sampsell v. Straub, 194 F.2d 228 (9th Cir. 1951) C.D. 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338 (1952), and upon which the court reversed the order of the referee.

Under the heading of "Statement of the Case" in the opening brief of the appellant, it is stated:

"Although in the form of grant deeds absolute on their face, the said conveyance was in fact a security transaction, reserving to bankrupt and his wife equitable title to said real property * * *."

In his closing brief, the appellant repudiates the stipulation of fact that the bankrupt had only an equitable interest in the real property, and for the first time claims that under California law "the bankrupt and his wife retained legal title in the real estate at all times," and cites many decisions from the courts of California, including Bank of Italy Nat. Trust & Sav. Ass'n v. Bentley, 217 Cal. 644, 20 P.2d 940, which appellant claims support his belated but new contention. Appellant's present contention was never presented to the referee in bankruptcy or to the district court, and the district court has had no opportunity to consider this tardy change of position of the appellant.

In these circumstances we deem it inappropriate for this court to decide this appeal on the present record. The order of the district court is vacated and the cause remanded to the district court with directions that the appellant seek relief from his stipulation, and that such further proceedings be conducted by the dis-

trict court as the district court may deem to be proper in the premises. In the event that either party shall prosecute an appeal from the order which shall be entered by the district court on this remand, such appeal may be taken on the present record supplemented by the proceedings taken on remand. In the event of such an appeal the parties may file supplemental briefs in typewritten form.

POPE, Circuit Judge (concurring):

I am in complete agreement with all that is said in Judge Jertberg's opinion. I think I should add one further observation respecting a matter which has impressed me in the consideration of this case. When the district court considers this case, it will necessarily have in mind the stipulation of the parties, quoted in Judge Jertberg's opinion as follows: "Although in the form of grant deeds absolute on their face, the said conveyance was in fact a security transaction reserving to bankrupt and his wife equitable title to said real property pursuant to declaration of trust executed on November 29, 1956 and recorded on August 8, 1960 by Title Insurance and Trust Company." Substantially the same statement is contained in the referee's finding of fact, also quoted in the opinion.

Although, as the opinion suggests, the stipulation in that form probably misled the trial court, I think it is inherently an incomplete or possibly an ambiguous stipulation, which, when read in the light of the leading case of Bank of Italy Nat. Trust & Sav. Ass'n v. Bentley, 217 Cal. 644, 20 P.2d 940, 944, must be held not determinative of the issues in this case.

The language of the stipulation refers solely to the effect of the conveyance to Title Insurance and Trust Company, and, as the Bank of Italy case notes, it is accurate to say as between the bankrupt and his wife, on the one hand, and the Trust Company, on the other, legal title was conveyed to the Trust Company so that as between the bankrupt and the Trust Company, it could be said that the bankrupt and his wife reserved equitable title in themselves.

The Bank of Italy case notes what it calls the "anomalous nature of deeds of trust in this state". The anomaly is stated in that case as follows: "[T]he sum and substance of such discussion is that while the legal title passes thereunder, and the trustees cannot be held to hold a mere 'lien' on the property, it is practically and substantially only a mortgage with power of sale. [Citing cases] The legal title is conveyed solely for the purpose of security, leaving in the trustor or his successors a legal estate in the property, as against all persons except the trustees and those lawfully claiming under them. * * * Except as to the trustees and those holding under them, the trustor or his successor is treated by our law as the holder of the legal title." 20 P.2d at 944. That case followed a long series of decisions in California and has itself been cited and followed some 50 times since its decision. Thus in 1908, in MacLeod v. Moran, 153 Cal. 97, 94 P. 604, that court said: "The legal title is conveyed solely for the purpose of security, leaving in the trustor or his successors a legal estate in the property, as against all persons except the trustees and those lawfully claiming under them. Sections 865, 866, Civ.Code. Except as to the trustees and those holding under them, the trustor or his successor is treated by our law as the holder of the legal title." A very recent exposition of this "anomalous nature of deeds of trust in this state", following the Bank of Italy case, is found in Hamel v. Gootkin, 202 Cal.App.2d 27, 20 Cal.Rptr. 372 (1962).

Thus it is apparent that the stipulation in this case merely described the effect of the deed of trust as between the trustor and the trustee. A complete statement of the resultant condition of the title would have to add to that stipulation the statement made in the Bank of Italy case as follows: "Except as to the trustees and those holding under them, the trustor or his successor is treated by our law as the holder of the legal title."

As I view it, the right of the matter here before us is that on the admitted

facts here presented, except as respects the trustee, the bankrupt had legal title which must be treated as such as against all other persons including his creditors. It follows therefore that under § 70, sub. c of the Bankruptcy Act, a creditor of this bankrupt could have obtained a lien by legal proceedings at the date of the bankruptcy, such legal proceedings being the filing of the abstract of judgment pursuant to § 674 of the Code of Civ. Proc. On this remand the case will reach the trial court in that condition.

CHAMBERS, Circuit Judge (concurring):

While I concur in sending the case back to the district court, I think we could decide the case now, whether we deal with a legal or equitable interest, on the basis of pertinent sections of the Bankruptcy Act. But I have no objection to getting two strings on the bow.